JAM:BDM:CSK
F.# 2021V00690

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

------------------------X

UNITED STATES OF AMERICA,

        Plaintiff,

    - against -

APPROXIMATELY SIX HUNDRED THIRTY-FIVE
THOUSAND ONE HUNDRED FORTY DOLLARS AND
ZERO CENTS OF UNITED STATES CURRENCY
($635,140.00) AND

APPROXIMATELY SEVEN UNITED STATES POSTAL
MONEY ORDERS, WITH A VALUE OF
APPROXIMATELY SIX THOUSAND EIGHT HUNDRED
($6,800.00) DOLLARS AND ZERO CENTS,

SEIZED FROM ERIC TIAPEPE DANIELSON AT JOHN F.
KENNEDY AIRPORT ON OR ABOUT JANUARY 24,
2021, AND ALL PROCEEDS TRACEABLE THERETO,

        Defendant in rem.

Civil Action No. CV 21-4033

------------------------X

    Plaintiff, United States of America, by its attorney, JACQUELYN M. KASULIS, Acting United States Attorney for the Eastern District of New York, Claire S. Kedeshian, Assistant United States Attorney, of counsel, for its complaint alleges upon information and belief as follows:

## NATURE OF THE ACTION

1. This is a civil action in rem to forfeit and condemn to the use and benefit of the United States the following funds in the total amount of approximately six hundred forty-one thousand, nine hundred forty dollars and no cents ($641,940.00), and all proceeds traceable thereto (collectively the "Defendant Funds"), which were seized on or about January 24, 2021, from Eric Tiapepe Danielson ("Danielson") at John F. Kennedy International Airport ("JFK") in Jamaica, Queens, New York. The Defendant Funds are comprised of: (a) approximately six hundred thirty-five thousand one hundred forty dollars and zero cents ($635,140.00) in U.S. Currency (the "Defendant Cash"); and (b) approximately seven blank U.S. postal money orders (the "Defendant Money Orders") valued at approximately six thousand eight hundred dollars and zero cents ($6,800.00).

2. As set forth herein, the Defendant Funds are subject to forfeiture pursuant to 21 U.S.C. § 881(a)(6), as moneys furnished or intended to be furnished in exchange for a controlled substance, proceeds traceable to such an exchange, and/or moneys used or intended to be used to facilitate violations of the Controlled Substances Act, 21 U.S.C. §§ 841 et seq. (the "CSA").

## JURISDICTION AND VENUE

3. This Court has jurisdiction over this action under 28 U.S.C. §§ 1345 and 1355.

4. Venue is proper pursuant to 28 U.S.C. §§ 1355(b)(1)(A) and 1395(a) in that the acts and omissions giving rise to the forfeiture occurred in the Eastern District of New York.

## STATUTORY AND REGULATORY FRAMEWORK

5. Pursuant to 21 U.S.C. § 881(a)(6), all moneys, negotiable instruments, securities, or other things of value furnished or intended to be furnished by any person in exchange for a controlled substance or listed chemical in violation of the CSA, all proceeds traceable to such an exchange, and all moneys, negotiable instruments, and securities used or intended to be used to facilitate such a violation, are subject to forfeiture to the United States.

## FACTS

6. On January 24, 2021, members of law enforcement agents at JFK approached Danielson as he was about to board a flight to Los Angeles, California. Danielson was a crew member employed by Endeavor Air Delta, a domestic regional airline. Danielson held a California identification card and United States passport.

7. During the encounter, Danielson consented to the search of a black roll-away bag he had in his possession. Before searching the roll-away bag, law enforcement agents noted the smell of marijuana emanating from the bag.

8. Upon searching the bag, law enforcement agents discovered that the bag was filled with numerous bundles of United States currency cash (defined previously as the "Defendant Cash") wrapped in rubber bands. Interspersed within the bundles of Defendant Cash, law enforcement agents also found seven United States Postal Service

(USPS) money orders (defined previously as the "Defendant Money Orders") that were "blank" in that they did not have a designated payee.

9. When the law enforcement agents asked Danielson about the Defendant Funds, Danielson appeared to be nervous and gave inconsistent responses. For example, he initially stated he did not know whose money it was. Then he indicated he was carrying approximately $100,000, which he indicated was from savings, that he had been working for Delta for approximately four years, and makes approximately $25,000 per year. Ultimately, Danielson admitted that it was not his money and was not sure how much money was in the bag.

10. With respect to how he got the bag, Danielson explained that he met with a white female, in her mid-30's, 5'8", petite with long blonde hair, who he did not know, named "Gloria" (last name unknown, "LNU")  (a/k/a "GG") at the parking lot of the Crowne Plaza Hotel located near JFK. The woman passed the Defendant Funds to Danielson in a black roll-away bag. Danielson further stated that he communicated with her on WhatsApp, however the messages had been deleted from his phone and a new number came up. Danielson was unable to provide any other information regarding Gloria LNU (a/k/a "GG"). According to Danielson, when he arrived in Los Angeles, California, he was supposed to meet with a different female named "Lisa" at the Marriott Residence Inn located approximately ten or fifteen minutes away from Los Angeles International Airport, near Marina Del Rey, to deliver the roll-away bag of Defendant Funds. Danielson did not or could not provide law enforcement any additional information about "Lisa."

4

11. According to Danielson, he was going to be paid $1,500.00 for the transportation of the Defendant Funds. Further, after he was due to meet "Lisa," he was scheduled to go to Minneapolis, Minnesota on January 25, 2021 for flight attendant training.

12. On the same day that the Defendant Funds were seized, a trained narcotics detection K-9 Unit conducted a sniff test of the Defendant Cash and Defendant Money Orders in a sterile area. The K-9 alerted positive for narcotics on the Defendant Cash and Defendant Money Orders located in the black roll-away bag that Danielson had in his possession.

13. Based on the foregoing, law enforcement agents seized the Defendant Funds.

14. A subsequent inventory and count of the Defendant Cash seized from Danielson, indicated that it totaled approximately $635,140.00 and was in the following denominations: 1,292 $100 bills; 1,323 $50 bills; 21,627 $20 bills; 544 $10 bills; 357 $5 bills; and 25 $1 bills.

15. Narcotics dealers largely conduct their transactions in cash. The disproportionate number of $20 bills is consistent with narcotics trafficking as the source of funds.

16. As previously mentioned, in addition to the defendant cash, there were seven Defendant Money Orders that were all blank as to the payee and in denominations of $1,000 or $800. Specifically, six of the Defendant Money Orders were in the amount of $1,000, and one was in the amount of $800. Money launderers usually do not obtain money orders from the Postal Services in excess of these denominations because higher

denomination money orders require identification and reporting. Moreover, blank money orders in the amounts present in this case are commonly used in narcotics trafficking, since they are easier to physically conceal than carrying large wads of cash.

17. A review of the Defendant Money Orders showed that all seven of them had been purchased on the same day, January 20, 2021, in the state of Connecticut. Two of the blank Defendant Money Orders had sequential serial numbers on them, indicating that they had been purchased from the same U.S. Post Office after one another. Furthermore, the other five of the blank Defendant Money Orders were purchased from different clerks, at different U.S. Post Offices, within a two minute time frame of each other.

18. This pattern of purchasing blank U.S. Postal Money Orders allowed the purchaser(s) to avoid triggering the identification requirement for purchases of U.S. Postal Money Orders exceeding $3,000, as required by 31 U.S.C. § 5325(a) and 31 C.F.R. § 1010.415. Under that regulation, the U.S. Postal Service requires that any customer whose daily total of purchased money orders is $3,000 or more, regardless of the number of visits the customer makes to one or more postal facilities, to complete PS Form 8105-A, Funds Transaction Report (FTR), and show an acceptable primary form of identification. See Mailing Standards of the United States Postal Service, Domestic Mail Manual, 3.2.2 Purchase Restrictions.

## CLAIM FOR RELIEF

19. Plaintiff repeats and realleges each and every allegation contained in paragraphs 1 through 16 above as if fully set forth herein.

20. The Defendant Funds constitute moneys, negotiable instruments, securities, or other things of value furnished or intended to be furnished in exchange for a controlled substance or listed chemical in violation of the CSA, proceeds traceable to such an exchange, and/or moneys, negotiable instruments, and securities used or intended to be used to facilitate a violation of the CSA.

21. As a result of the foregoing, the Defendant Funds are liable to condemnation and forfeiture to the United States in accordance with the provisions of 21 U.S.C. § 881(a)(6).

WHEREFORE, plaintiff, United States of America, requests that a Warrant of this Court issue for the arrest of the Defendant Funds; that due notice of these proceedings be given to all interested persons; that the Defendant Funds be forfeited and condemned to the use and benefit of the United States of America; and that plaintiff be awarded its costs and disbursements in this action, and for other and further relief as this Court deems just and proper.

Dated:   Brooklyn, New York
         July 19, 2021

JACQUELYN M. KASULIS
Acting United States Attorney
Eastern District of New York
*Attorney for Plaintiff*
271 Cadman Plaza East
Brooklyn, New York 11201

By:   *Claire S. Kedeshian*
      _____
      Claire S. Kedeshian
      Assistant U.S. Attorney
      271-A Cadman Plaza
      (718) 254-6051

## VERIFICATION

1. I am a Special Agent for the United States Drug Enforcement Administration, based at John F. Kennedy International Airport, in Jamaica, New York.

2. I have read the Verified Complaint in rem in this action.

3. The matters contained in the within Verified Complaint in rem are true and accurate to the best of my knowledge, information and belief.

4. The source of my information and the grounds for my belief are my personal knowledge, information provided by other law enforcement officers and the official files and records of the DEA.

I declare under penalty of perjury that the foregoing is true and correct to the best of my knowledge, information and belief.

Dated:    Brooklyn, New York
          July 16th, 2021

_____
Antonio J. LoGrande
Special Agent
Drug Enforcement Administration
Department of Justice